Tommie Lee PATTERSON, Appellant,

v.

TOMMY BLAIR, INC., d/b/a Courtesy Autoplex, Appellee.

No. 2006–CA–001587–MR.

Court of Appeals of Kentucky.

Nov. 30, 2007.

Discretionary Review Denied by Supreme Court Oct. 15, 2008.

242

James W. Owens, Donald R. Green, Jr., Paducah, KY, for Appellant.

Mark D. Pierce, Paducah, KY, for Appellee.

Before ACREE and VANMETER, Judges; ROSENBLUM,[1] Senior Judge.

## OPINION

VANMETER, Judge.

Tommie Lee Patterson appeals from the McCracken Circuit Court's summary judgment against him on his claim for punitive damages against Tommy Blair, Inc., d/b/a Courtesy Autoplex (Courtesy). For the following reasons, we affirm.

## I. FACTS

As previously described by the Kentucky Supreme Court, the facts giving rise to this matter are as follows:

> On September 28, 1995, Patterson entered into an agreement with Courtesy to trade his Camaro for a new 1995 GMC Jimmy. At the time of the trade, Patterson owed $12,402.82 on the Camaro. Despite this, he incorrectly informed Courtesy that he owed only

---

1. Senior Judge Paul W. Rosenblum sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

$9,500.00 on the car. The transaction occurred at a time when the bank was closed and Courtesy could not verify the payoff amount on the loan. Courtesy allowed Patterson to take possession of the Jimmy, but did not transfer title. An agreement was also executed providing that Courtesy would credit Patterson if he had overstated his outstanding indebtedness on the Camaro and, likewise, that he would pay the difference if his figure understated that amount. When the bank opened the next day, Courtesy discovered the amount Patterson actually owed on the Camaro. When notified of this discrepancy, Patterson refused to pay the additional sum and refused to return the Jimmy. Courtesy subsequently tried unsuccessfully to repossess the truck on at least two occasions.

On October 4, 1995, after investigating where he could find Patterson, Blair, Jr. and another Courtesy employee encountered Patterson, who was driving the Jimmy, on a public road. At a stoplight, Blair, Jr. exited his car and knocked on the Jimmy's driver-side window, demanding that Patterson get out of the vehicle. When Patterson refused, Blair, Jr. drew a pistol he was carrying and fired two shots in the front tire and two shots in the rear tire of the Jimmy. Ultimately, the disabled truck was impounded and returned to Courtesy by the police.

Courtesy obtained a judgment against Patterson for the Jimmy's loss in value. Citizens Bank, which had financed the Camaro that had been traded-in, obtained a judgment against Patterson for the remaining sum owed on its loan. Blair, Jr. was criminally prosecuted and was convicted of wanton endangerment in the first degree, a felony. Patterson sued Blair, Jr. and Courtesy under several different tort theories. At trial, the jury was instructed on assault and the theory of vicarious liability, allowing the jury to impute liability to Courtesy for the actions of its agent, Blair, Jr. *Patterson v. Blair*, 172 S.W.3d 361, 363 (Ky.2005). The trial court denied Patterson's request to instruct the jury on punitive damages. Ultimately, the jury awarded Patterson damages of $42,465.18 and found that Courtesy was vicariously liable for Blair, Jr.'s conduct. *Id.* at 362.

On appeal, this court held that since Blair, Jr. was not acting within the scope of his employment, Courtesy could not be held liable under *respondeat superior*. *Patterson v. Blair*, Nos. 2001–CA–002057–MR and 2001–CA–002107–MR, 2003 WL 21204465, slip op. at 4–6 (Ky.App. May 23, 2003). This court also reversed the trial court's denial of Patterson's requested instruction on punitive damages against Blair, Jr. *Id.* at 4. Thereafter, the Kentucky Supreme Court granted discretionary review on the former holding and reversed, reinstating the jury's verdict against Courtesy. *Patterson*, 172 S.W.3d at 363. The parties did not seek discretionary review on the issue of punitive damages, however. *Id.* at 363 n. 1.

On remand, the compensatory judgment in Patterson's favor was satisfied, leaving only Patterson's punitive damages claim. Subsequently, the trial court dismissed Blair, Jr. from the matter since he had "sought and obtained discharge of his liabilities to Patterson" in bankruptcy court. The court ultimately granted summary judgment in Courtesy's favor, finding that it was impossible for Patterson to prove that he was entitled to punitive damages against Courtesy under KRS 411.184(3) or 411.184(2). This appeal followed.

## II. SUMMARY JUDGMENT STANDARD

As an initial matter, Patterson argues that the trial court erroneously placed on

him the burden of proving the existence of a material issue of fact, contrary to the summary judgment standard set forth in CR [2] 56. We disagree.

In its summary judgment, the trial court cited *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky.1991), a familiar authority on the summary judgment standard in Kentucky. Consistent with that standard, the trial court expressed that it was viewing "the evidence and legitimate inferences flowing therefrom in the light most favorable to Patterson" and that it "should terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at trial (here a second trial) warranting judgment against the movant." Thus, the trial court set forth the correct summary judgment standard. A different result is not compelled by the trial court's somewhat inartful but correct statement that Patterson bore the ultimate burden of proving that he was entitled to punitive damages under KRS 411.184(3).

### III. PUNITIVE DAMAGES UNDER KRS 411.184(3)

Next, Patterson argues that the trial court erred by granting summary judgment in Courtesy's favor on the issue of punitive damages under KRS 411.184(3) because there was a factual question as to whether Courtesy authorized, ratified, or should have anticipated Blair, Jr.'s conduct. We disagree.

Pursuant to KRS 411.184(3), punitive damages shall not be assessed "against a principal or employer for the act of an agent or employee unless such principal or employer authorized or ratified or should have anticipated the conduct in question." The terms "authorized," "ratified," and "should have anticipated the conduct in question" are not defined in the statute, although authorization and ratification are familiar concepts in agency law.

In order to recover punitive damages from Courtesy, Patterson must show more than the fact that Courtesy authorized, ratified, or anticipated Blair, Jr.'s repossession [3] of the vehicle. Punitive damages are "awarded against a person to punish and to discourage him and others from similar conduct in the future." KRS 411.184(1)(f). Clearly it is not desirable to punish or discourage Courtesy or any other business from repossessing a vehicle which it is entitled to repossess. Rather, it is desirable to punish Courtesy only if it authorized, ratified, or should have anticipated Blair, Jr.'s repossession of the vehicle in an impermissible manner. *Cf. Patterson*, 172 S.W.3d at 364 (employer is strictly liable for compensatory damages resulting from the tortious acts of his employees committed in the scope of employment). We do agree with Patterson, however, that he need not prove that Courtesy should have anticipated the exact undesirable manner of the repossession, i.e., that Blair, Jr. would fire four bullets into the tires of the vehicle.

#### A. Authorization

■ Patterson relies upon Blair, Sr.'s knowledge of the events surrounding the repossession of the 1995 GMC Jimmy as evidence that Courtesy authorized Blair

**2.** Kentucky Rules of Civil Procedure.

**3.** Courtesy argues that the incident in question was not a "repossession." Regardless of whether Patterson ever actually owned the vehicle, it is undisputed that he had posses-

sion of it and that Courtesy took it back from him. Thus, they repossessed the vehicle. *See Black's Law Dictionary* 1303 (7th ed.1999) defining "repossession" in part as "[t]he act or an instance of retaking property[.]"

Jr.'s conduct. More specifically, Patterson points to the fact that Blair, Sr. was aware of the contractual dispute between Courtesy and Patterson, and the fact that Blair, Jr. had taken it upon himself to repossess the vehicle. Blair, Sr. also knew that a couple of Courtesy employees had previously made unsuccessful attempts to repossess the vehicle. However, this evidence alone is insufficient to support an award of punitive damages in Patterson's favor, as it does not show that Blair, Sr. ever authorized Blair, Jr. to use the type of conduct employed to repossess the vehicle.

## A. Ratification

■ Nor are we persuaded by Patterson's argument that Courtesy ratified Blair, Jr.'s conduct when it did not officially discipline or reprimand him for his conduct, and when it retained possession of the 1995 GMC Jimmy. Blair, Sr. testified that he talked with Blair, Jr., who "knew he should not have done it," repudiated Blair, Jr.'s actions, and advised Blair, Jr. to turn himself into the police. Although Courtesy retained possession of the vehicle, that fact alone does not amount to ratification of the means employed by Blair, Jr. to repossess the vehicle.

## C. Anticipation

■ Patterson argues that Blair, Sr. should have anticipated Blair, Jr.'s conduct because Blair, Sr. was aware that as a teenager, his son called the police when he thought he heard a trespasser while he was home alone one night. At one point, Blair, Jr. had a gun in his possession when Blair, Sr. returned home. However, this testimony has little relevance since Blair, Jr. was 29 years old at the time he repossessed the 1995 GMC Jimmy.

Patterson also cites to Blair, Jr.'s previous experience in repossessing vehicles for other businesses as evidence that Blair, Sr. should have anticipated Blair, Jr.'s conduct. However, if anything this tends to show that Blair, Sr. had no reason to expect illegal conduct in the repossession of the 1995 GMC Jimmy, since there is no evidence that Blair, Jr. previously repossessed any vehicles in an impermissible manner. Further, the fact that one of Blair, Jr.'s friends testified that Blair, Jr. "usually carried a handgun with him all the time" does not support the proposition that Blair, Sr. should have anticipated Blair, Jr.'s conduct, as there is no evidence that Blair, Jr. had ever previously used any gun in an inappropriate manner.

Nor does the fact that Blair, Jr. repossessed the vehicle while he was accompanied by another Courtesy employee, who was a convicted felon, support the proposition that Blair, Sr. should have anticipated Blair, Jr.'s conduct. There is no evidence that the convicted felon influenced Blair, Jr.'s conduct in any way.

As the evidence does not show that Blair, Sr. should have anticipated Blair, Jr.'s conduct, it would be impossible for a jury to award punitive damages in Patterson's favor. Accordingly, the trial court did not err by granting summary judgment in Courtesy's favor.

## IV. PUNITIVE DAMAGES UNDER KRS 411.184(2)

Finally, Patterson argues that the trial court erred by holding that in order for him to recover punitive damages from Courtesy, he had to prove not only that Courtesy authorized, ratified, or should have anticipated Blair, Jr.'s impermissible conduct for purposes of KRS 411.184(3), but also that both Blair, Jr. and Courtesy acted toward him with oppression, fraud, or malice for purposes of KRS 411.184(2). As Patterson concedes that he must meet the requirements of KRS 411.184(3), and

we have already held that it was impossible for Patterson to do so, we need not reach whether the trial court in fact imposed this additional burden on Patterson, or erred by doing so.

The McCracken Circuit Court's summary judgment in Courtesy's favor is affirmed.

ALL CONCUR.